**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **No. 1:15-cr-0099** |
| | : | |
| **v.** | : | |
| | : | **(Judge Kane)** |
| **ANGEL PAGAN,** | : | |
| **Defendant** | : | |

## MEMORANDUM

Before the Court is Defendant Angel Pagan's motion to suppress physical evidence and statements. (Doc. No. 22.)  The Court conducted a hearing on the motion on August 27, 2015. For the reasons that follow, the Court will grant in part and deny in part Defendant's motion.

## I.      BACKGROUND

With this motion, Defendant seeks to exclude an AK-47 rifle, ammunition, two body armor vests, a digital video recorder, and a quantity of synthetic marijuana recovered during a December 2014 warrantless search of Defendant's residence.  (Doc. No. 23 at 3-4.)  In addition, Defendant seeks to exclude statements he made to police during and after the search.  (Id.)

On May 20, 2015, a federal grand jury returned a five-count indictment charging Defendant with being a felon in possession of a firearm, possession of a stolen firearm, possession of body armor by a prohibited person, possession with intent to distribute a schedule 1 controlled substance, and possession of a firearm in furtherance of a drug trafficking crime. (Doc. No. 1.)  The entirety of the indictment is predicated upon the search and statements Defendant made during and after the search.  (See id.) (charging Defendant for activities "[o]n or about December 20, 2014, in Lebanon County . . . .").  Jury selection in this case is scheduled to begin on December 7, 2015.  (Doc. No. 28.)

1

The Court conducted a hearing on the motion on August 27, 2015.  At the hearing, the Government offered the testimony of Detectives William Walton, Lawrence Minnick, and Ryan Mong of the Lebanon County Drug Task Force.  Defendant offered his own testimony, as well as the testimony of his wife Aubrey Pagan and his mother-in-law Lisa Pennie.  Each party also proffered two exhibits: the Government proffered a state court child custody order and an audio recording of an interview conducted with Defendant after the search was concluded, and Defendant proffered a police report prepared after the search and a photograph of the residence.

Detective Walton testified that he led the investigation that involved the search of Defendant's home.[1]  (See Hearing Transcript at 4:14-21.)  Detective Walton testified that in the week preceding December 20, 2014, he received a tip from a confidential informant that "there was potentially body armor, a hand grenade, and weapons" at a residence in Lebanon, Pennsylvania.  (Id. at 21:15-23.)  Police drove through the neighborhood where they suspected the residence was located, and ultimately determined that the informant's tip referred to 19 S. 11th Street in Lebanon.  (Id. at 4:22 to 5:12.)

According to Detective Walton's testimony, on December 20, 2014, at approximately 1:30 p.m., Detectives Walton, Minnick, and Mong drove in an unmarked police minivan to Defendant's residence.  (Id. at 7:1-8.)  The detectives did not obtain a warrant before traveling to Defendant's residence.  The detectives were wearing civilian clothes, although each was also wearing a protective vest bearing the word, "Police."  (Id. at 7:16-23.)  Detective Walton was

---

[1] The facts described herein are drawn from testimony presented at the August 27, 2015 hearing.  The Court credits the testimony of Detective Walton, as corroborated by Detectives Minnick and Mong.  The Court also credits the testimonies of Mrs. Pagan and Ms. Pennie to the extent that they are consistent with the narrative presented here.  Testimony that the Court does not fully credit appears in the margin.

visibly wearing a sidearm, while the other officers' firearms were concealed under clothing.  (Id. at 22:17-19; 42:21-24.)

When the detectives arrived at the address, they exited the vehicle and approached the house, where they encountered the Defendant on his front porch along with his then-fiancee and two minor children.  (Id. at 7:12-13.)  The detectives identified themselves and asked for the renter or owner of the house.  (Id. at 8:8-15.)  Defendant identified himself as the person in charge.  (Id. at 28:13-19.)  When Detective Walton asked if he could speak with Defendant, Defendant agreed, but came down off of the porch and onto the sidewalk, out of earshot of his family.[2]  (Id. at 28:18 to 29:2.)  Detective Walton told Defendant about the tip that the police had received, and he asked Defendant if the detectives could search the house for the items described.  (Id. at 8:23 to 9:14) ("[Detective Walton:] I told him about the information in reference to the firearms and vest . . . .").  Defendant was concerned about his children seeing police enter his home because of an ongoing custody dispute with his former wife.  (See id. at 9:11-18.)

In light of Defendant's concern, Detective Walton suggested that the officers enter through the back door to conduct the search, and Defendant agreed and led Detectives Walton and Mong to the back door of the residence through an alleyway.  (Id. at 11:1-7) ("[Detective Walton:] I asked him for permission to search his house for those items.  He gave us permission. He then said that he was worried about the police walking into the house in front of the kids, so I suggested that we go in the back door.").  Detective Mong testified that he overheard Defendant

_____

[2] Mrs. Pagan and Ms. Pennie testified that Defendant refused consent to search the residence while still on the front porch of the residence.  (Hearing Transcript at 83:2-84:6; 109:22-110:5.)  The Court does not find this testimony credible.

consent to the search.[3]  (Id. at 62:17 to 63:7.)  Detective Minnick was on the front porch out of

earshot of the conversation, but he testified that Detective Walton and Defendant were talking

off of the porch, and that Detective Mong was in a position to hear the conversation.  (Id. at

43:17 to 44:2.)

    During his conversation with Defendant, Detective Walton was explicit about the items

that were the object of the search: Detective Walton: "I asked him that we wanted to go in his

house and search for weapons and the vests."  (Id. at 11:17-18.)  The rear door of the house was

locked.  (Id. at 31:14-19.)  Detective Minnick testified that after Detective Walton either called

or radioed him asking for the door to be unlocked, Mrs. Pagan entered the house from the front

porch, and walked through the house to unlock the rear door.[4]  (Id. at 44:20 to 45:3.)  After the

door was unlocked Detectives Walton and Mong entered the house with Defendant through the

rear door and began the search.  (Id. at 31:14-19.)

    After they had been searching for twenty to twenty-five minutes, the detectives found an

AK-47 rifle with two loaded magazines, a case for the weapon, and "two ballistic vests" on the

first floor of the residence.  (Id. at 16:11-16; 33:17-20.)  On the second floor, detectives located

video surveillance equipment.  (Id. at 46:7-13.)  The surveillance equipment was attached to four

exterior cameras, and imagery from the cameras was displayed on a screen on the second floor.

(Id. at 46:7-13; 104:17-22; Defendant's Exhibit "1" at 6.)  In addition, the detectives ultimately

---

[3] Defendant testified that he did not give consent to the search during this conversation, and that he walked to his backyard to tend to his dog and that the officers followed him.  (Id. at 124:23 to 125:9.)

[4] Both Mrs. Pagan and Ms. Pennie testified that Ms. Pennie opened the back door at Detective Minnick's command.  (Id. at 89:10-24; Id. at 112:14-16.)

located a quantity of synthetic marijuana on the premises.  (Hearing Transcript at 17:17-24.)

Defendant filed the present motion to suppress evidence on July 13, 2015.  He argues that he never consented to a search of his residence, so evidence from the warrantless search and the statement he made in the wake of the search must be suppressed under the exclusionary rule. Defendant also argues that, even if the Court finds that he did consent to the search, the seizure of the camera equipment was beyond the scope of consent and must be suppressed.

## II.    LEGAL STANDARD

A criminal defendant brings motions to suppress evidence pursuant to Federal Rule of Criminal Procedure 12(b)(3)(C), seeking to show that evidence against him or her was unconstitutionally obtained, so that the so-called "exclusionary rule" operates to bar the evidence's admission against that defendant at trial.  See Fed. R. Crim. P. 12(b)(3)(C).  At a hearing on a motion to suppress, "'the credibility of the witnesses and the weight to be given the evidence, together with the inferences, deductions and conclusions to be drawn from the evidence, are all matters to be determined by the trial judge.'"  United States v. Richardson, 501 F. Supp. 2d 724, 734 (W.D. Pa. 2007) (quoting United States v. McKneely, 6 F.3d 1447, 1452-53 (10th Cir. 1993)).

Generally speaking, the exclusionary rule bars the introduction of evidence obtained in violation of an individual's rights under the Fourth Amendment to the United States Constitution.[5]  See United States v. Leon, 468 U.S. 897, 906 (1984).  The Fourth Amendment prohibits unreasonable searches and seizures, and consequently, authorities are typically required

---

[5] The rule is not a means of vindicating individual rights, but is instead a means of encouraging authorities to conduct lawful investigations.  See Leon, 468 U.S. at 906-08.

to obtain a warrant before conducting a search.  United States v. Herrold, 962 F.2d 1131, 1137

(3d Cir. 1992).  When challenging an allegedly unlawful search or seizure, a challenger must

first show a "reasonable expectation of privacy," in the place or thing searched, thereby

establishing standing to challenge the search or the seizure.  Rakas v. Illinois, 439 U.S. 128, 132

n.1 (1978).  Where a search or seizure occurred without a warrant, the Government bears the

burden of showing that the search or seizure fit within one of the established exceptions to the

general warrant requirement or that a warrant was otherwise not required.  Herrold, 962 F.2d at

1137.  "Exceptions to the search warrant requirement include searches incident to arrest,

protective sweeps, searches under exigent circumstances, discovery of items based on plain

perception, the automobile exception, searches for the purpose of administrative and special

needs, and the 'stop and frisk' doctrine."  Fed. Prac. & Proc. Crim. § 675 (4th ed.) ("Wright &

Miller").

"[A] search conducted pursuant to consent is one of the specifically established

exceptions to the search warrant requirement."  United States v. Givan, 320 F.3d 452, 459 (3d

Cir. 2003).  When an individual gives consent to a search of his property, "any evidence

discovered during such a search may be seized and admitted at trial."  United States v. Kim, 27

F.3d 947, 955 (3d Cir. 1994).  However, "the Government has the burden of demonstrating the

scope and the voluntariness of the consent."  United States v. Pelle, No. 05-407, 2006 WL

436920, at *2 (D.N.J. Feb. 17, 2006) (citing Florida v. Jimeno, 500 U.S. 248, 252 (1991)).  "The

standard for measuring the scope of a suspect's consent under the Fourth Amendment is that of

'objective' reasonableness – what would the typical reasonable person have understood by the

exchange between the officer and the suspect?"  Kim, 27 F.3d at 957.  "Consent must be

6

voluntary, may be express or implied, and need not be knowing or intelligent." United States v. Lockett, 406 F.3d 207, 211 (3d Cir. 2005); see also Lopez-Rodriguez v. Mukasey, 536 F.3d 1012, 1017 (9th Cir. 2008) (inferring consent "where the officers have verbally requested permission to enter [a residence] and the occupant's action suggests assent"). Consent "may be given unintentionally and without knowledge of the right to refuse consent, and the police are not required to warn an individual of the right to refuse consent." Lockett, 406 F.3d at 211; see also United States v. Tarburton, 610 F. Supp. 2d 268, 274 (D. Del. 2009) (applying Lockett to searches of a residence); Welsch v. Twp. of Upper Darby, No. 07-4578, 2008 WL 3919354, at *4 (E.D. Pa. Aug. 26, 2008) (same).

## III.    DISCUSSION

Disposition of Defendant's motion primarily turns on whether he verbally consented to the search of his residence.  In view of the consistent and credible testimony of Detectives Walton, Minnick, and Mong, the Court finds that Defendant voluntarily consented to the search of the residence in response to a direct request from Detective Walton.  (See Hearing Transcript at 11:1-7; 62:17 to 63:7; 43:17 to 44:2.)  Even if Mrs. Pagan and Ms. Pennie overheard Defendant refuse the search initially while still on the front porch of the residence, they testified that they were unable to hear if Defendant consented to the search when he was speaking with Detective Walton away from the front porch.  (Id. at 86:6-9; 115:13-21.)  The Court does not credit Defendant's testimony that he refused the search.  The Court also does not credit Defendant's uncorroborated testimony that he walked into his backyard to tend to his dog, in part because none of the Detectives testified that a dog was present at all, much less barking. Consequently, the Court will not suppress the weapons, armor, or drugs obtained through the

search, nor will the Court suppress Defendant's statement made to police subsequent to the search.

However, the Court will suppress the video surveillance equipment and evidence obtained from a forensic analysis of the equipment.  Defendant raised a direct challenge to the seizure and use of this evidence, arguing that it was beyond the scope of any consent to search that he may have given.[6]  (Doc. Nos. 22 ¶ 8; 23 at 4 n.3.)  At the hearing, testimony revealed that Detective Walton informed Defendant of the tip concerning the weapons and requested permission to search the house to obtain that particular contraband.  (Hearing Transcript at 11:17-18.)  The Government bears the burden of establishing that a warrantless search or seizure undertaken pursuant to consent is conducted within the objectively reasonable bounds of that consent.  See Kim, 27 F.3d at 957.  The Government has established that Defendant consented to a search of the house for weapons and body armor, but no more.  And while detectives would not have been barred from searching the premises and seizing obvious contraband or evidence by the boundaries of consent, the Government has made no argument that the video surveillance equipment constituted contraband itself or otherwise served an evidentiary purpose.  See Horton v. California, 496 U.S. 128, 136 (1990) ("[N]ot only must the item be in plain view; its incriminating character must also be immediately apparent.") (quotations omitted).  Accordingly, the Court will order the video surveillance equipment suppressed.

IV.   **CONCLUSION**

For the foregoing reasons, the Court will grant in part and deny in part Defendant's

_____

[6] Defendant has not challenged the seizure of the synthetic marijuana beyond his general objection to the search, so the Court does not consider the propriety of its admission as evidence at trial.

motion to suppress evidence.  An order consistent with this memorandum follows.